# IN THE COURT OF APPEALS OF IOWA

No. 23-0002
Filed February 22, 2023

**IN THE INTEREST OF B.W.,**
**Minor Child,**

**V.W., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Scott County, Cheryl Traum, District Associate Judge.

A mother appeals the termination of her parental rights to her five-year-old daughter. **AFFIRMED.**

Barbara E. Maness, Davenport, for appellant mother.

Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Jean Capdevila, Davenport, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**TABOR, Presiding Judge.**

A mother, Victoria, challenges the termination of her parental rights to her five-year-old daughter, B.W. She contends the record lacks clear and convincing evidence the child could not be returned to her custody without the risk of harm. From our independent evaluation of the record, we find Victoria's refusal to accept that her boyfriend was responsible for the violent death of her son augurs poorly for her ability to provide a safe future for B.W.[1] Termination of Victoria's parental rights is in B.W.'s best interests.

While this case opened in August 2021, we must view it in a larger context. The court first removed B.W. and her older brother from their parents' custody in September 2018. That child-in-need-of-assisance (CINA) case stemmed from a physician's report that Victoria provided "false and exaggerated information about [B.W.'s] symptoms" leading to a diagnosis of "Munchausen Syndrome by Proxy which is now called 'factitious disorder imposed on another.'" *In re T.W.*, No. 20-1161, 2020 WL 7022390, at *1 (Iowa Ct. App. Nov. 30, 2020). The juvenile court eventually terminated the rights of both parents. When the case came to our court on appeal, we affirmed the termination of the father's rights but reversed the termination of Victoria's parental rights to two children. *Id.* at *4. The children were returned to her care in April 2021. That CINA case closed in June. Just two

---

[1] We review termination orders de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). We respect the juvenile court's factual findings, but they do not dictate our result on legal questions. *Id.* The State must prove the grounds for termination by clear and convincing evidence. *Id.* Our top priority is the child's best interests. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (identifying safety and the need for a permanent home as the "defining elements" in the best-interests determination).

months later, the older child suffered fatal injuries while in the care of Victoria's boyfriend, Dylan.

The juvenile court described that child's brutal treatment:

A 911 call was received about the sibling being found unconscious in the sleeper cab of a semi-truck at a rest stop in Indiana. He was in the care of the mother's new boyfriend, Dylan . . . . The child was taken to a hospital where he had multiple injuries including bleeding from his anus, injuries to his genitals, a head fracture, and burns around his mouth and nose. He also had an older head fracture and a broken collar bone that appeared to be two to four weeks old. The mother went to Indiana and the sibling eventually passed away.

A few days later, the Iowa Department of Health and Human Services located B.W. at the home of a relative and initiated removal proceedings. B.W. has not returned to Victoria's care.

Indiana authorities charged Dylan with a felony, neglect of a dependant person resulting in death. He is now serving a thirty-two-year prison term.[2] Despite Dylan's abuse of her son, Victoria continued their relationship, at one point vowing to "support Dylan no matter how much time he gets." The guardian ad litem (GAL) reported that Victoria was "learning to try to say she blames Dylan" for her son's death, but "her actions say otherwise." The GAL recommended termination, noting: "[Victoria]'s protective decisions have been fatal in the past and there is no significant improvement with additional services."

The juvenile court terminated Victoria's parental rights on five grounds. *See* Iowa Code § 232.116(1) (d), (e), (f), (i) and (m) (2022). We need only find sufficient

---

[2] Between the older sibling's death and Dylan's incarceration, he and Victoria had a child together. That child has also been removed from parental care but is not involved in this termination case.

proof of one ground to affirm.  *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

We focus on paragraph (f).

Under that section, the court may terminate parental rights if all of the following have occurred:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(f).

Victoria contests only element (4).  She asserts the State did not offer clear and convincing evidence that B.W. cannot be returned to her custody "at the present time."  *See In re A.S.,* 906 N.W.2d 467, 473 (Iowa 2018) (interpreting "at the present time" to mean the date of termination hearing).  She concedes that "facing the reality of what happened" to her older son "has been a process."  But she claimed to be making progress in therapy.  She also insists the "the risk associated with Dylan is removed" and she "fully understand her responsibilities" for B.W.

We reject her argument for four reasons.  First, we question Victoria's claim of therapeutic progress.  The record shows that she was dishonest with her therapist about the older child's cause of death.  Second, although Dylan is in prison, Victoria's own judgment when it comes to her children remains a concern.  On that issue, we embrace the GAL's view: "The mother remains oblivious to any

risk her behaviors may pose to her children and her protective capacities have continued to decline throughout this case."

Third, while not the impetus for termination this time, the department remained troubled by the mother's tendency to subject B.W. to unnecessary medical interventions. At a supervised visit with B.W., as the service provider's attention was diverted, Victoria poked the child's finger to test her blood sugar. Victoria, who has diabetes, testified that she was pricking her own finger when B.W. asked: "Mommy, can you do mine?" The juvenile court did not find that testimony credible; nor do we.

Finally, the record shows that Victoria struggled to form a bond with B.W. She admitted as much to the social workers. What's more, B.W. has severe mental-health issues and is "hyperactive" and "hard to control" after visits with her mother. Like the juvenile court, we find Victoria is "unable to handle the responsibilities and needs of this child."

Considering Victoria's failure to protect her older son, along with her reluctance to recognize Dylan's danger and the demands of caring for B.W., we conclude the child could not be safely returned to her custody. Accordingly, the State satisfied the only contested element of section 232.116(1)(f).

**AFFIRMED.**